

# McANDREW VUOTTO LLC
ATTORNEYS AT LAW

Jonathan P. Vuotto, Esq.
jpv@mcandrewvuotto.com
Direct: (973) 532-6242

February 6, 2026

*Via ECF*

Hon. George B. Daniels, U.S.D.J.
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 100

Hon. Sarah Netburn, U.S.M.J.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: In re Terrorist Attacks on September 11, 2001
Case No. 03 MDL 1570 (GBD)(SN)

Dear Judges Daniels and Netburn:

We represent Kristen Breitweiser, Individually and as Personal Representative of the Estate of Ronald M. Breitweiser, Caroline Breitweiser, Patricia Ryan, Individually and as Personal Representative of the Estate of John J. Ryan, Laura Ryan, Colin Ryan, Kristen Ryan and Jacqueline Eaton, Individually and as Personal Representative of the Estate of Robert D. Eaton (collectively, "Respondents"). We write in response to the January 30 and February 3, 2026, letters submitted by John F. Schutty, Esq. (ECF Nos. 11602, 11660), and respectfully submit that the relief Mr. Schutty seeks should be denied.

Mr. Schutty urges the Court to halt or delay Rule 54(b) certifications, findings under 28 U.S.C. § 1610(c), and AO 451 registrations across this MDL – essentially that judgment enforcement should be delayed or effectively barred pending resolution of unrelated matters elsewhere in the MDL. His request is unsupported by law and inconsistent with this Court's prior § 1610(c) orders, AO 451 certifications, and the established enforcement history in *Hoglan v. Iran*, which involved materially similar terrorism judgments and enforcement mechanisms.

I.  **Respondents Hold Final, Enforceable Judgments Against Iran**

Respondents hold final judgments entered by this Court against the Islamic Republic of Iran ("Iran") and related defendants, including judgments entered in 2016 awarding compensatory damages and interest (ECF Nos. 3226, 3229) and subsequent judgments entered thereafter. Copies of representative final judgments are submitted herewith as **Exhibit 1**. These judgments fully

resolved all claims against Iran as to Respondents, fixed damages with certainty , have never been vacated, modified or stayed, and are final and enforceable for purposes of execution under controlling Second Circuit precedent. *See Petrello v. White*, 533 F.3d 110, 113-14 (2d Cir. 2008). Nothing in the pending MDL proceedings alters that finality. Moreover, nothing in Mr. Schutty's submissions identifies any order, mandate, or docket entry that calls these judgments into question. The presence of unresolved claims against other defendants in this MDL does not impair the finality of a judgment that fully resolves all claims against Iran. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980).

### II.   Rule 54(b) Certification Is Appropriate and Consistent with MDL Practice

Rule 54(b) exists to permit enforcement where claims against one party have been fully adjudicated, even if other claims remain pending. *Id.* at 7-10. That is precisely the posture here. Respondents' judgments resolve all claims against Iran and are therefore eligible for certification to the extent the Court deems certification necessary.

Notably, the *Hoglan* plaintiffs never sought Rule 54(b) certification, because they did not need it and the Court did not require it. This Court treated the *Hoglan* judgment as final and enforceable as to Iran through its actions – by permitting appeal, issuing findings under 28 U.S.C. § 1610(c), authorizing AO 451 registrations, and allowing attachment and execution proceedings to proceed. Rule 54(b) is a discretionary, non-jurisdictional mechanism, not a prerequisite to enforcement where a judgment fully resolves claims against a particular defendant. Mr. Schutty's position improperly attempts to convert that discretionary tool into a gatekeeping requirement that has never existed in this MDL.

As discussed below, this Court has repeatedly authorized enforcement activity, including domestic and foreign restraint and execution proceedings, on judgments from this MDL lacking punitive damages, without requiring the resolution of all remaining claims against other defendants, and without requiring any showing beyond finality and the passage of time.

### III.   *Hoglan* Confirms the Court's Authority to Issue § 1610(c) Orders and Permit Enforcement

The Court's handling of the *Hoglan* judgment directly refutes the contention that § 1610(c) findings or enforcement must await global MDL finality. On February 26, 2018, this Court entered a Final Order and Judgment on Compensatory Damages in *Hoglan*, awarding more than $3.6 billion against Iran and its agencies and instrumentalities. A copy of that judgment is attached as **Exhibit 2**. The *Hoglan* judgment was then appealed (another sign of finality), and the Second Circuit affirmed the District Court in January 2019 (and no further appeals were taken). This Court thereafter repeatedly treated the *Hoglan* judgment as final and enforceable. The Court issued multiple orders under 28 U.S.C. § 1610(c) expressly finding that a reasonable period of time had elapsed and authorizing enforcement. For example: (i) March 19, 2020 Order for Writ of Attachment and Execution (ECF No. 6021), attached as **Exhibit 3(a)**; (ii) April 7, 2020 Order Under 28 U.S.C. § 1610(c) authorizing enforcement and restraining notices, attached as **Exhibit 3(b)**; (iii) issuance of writs under 28 U.S.C. § 1610(c) authorizing execution against blocked assets (**Exhibit 3**; **Exhibit 7**); (iv) multiple AO 451 Clerk's Certifications confirming enforceability and non-pendency of appeals (**Exhibit 4**; **Exhibit 8**); and (v) post-judgment discovery, subpoenas, and

turnover proceedings pursued by the *Hoglan* plaintiffs over a multi-year period (**Exhibit 5**; **Exhibit 6**). In other words, this Court has already permitted appeal, registration, and active attachment and execution proceedings based on terrorism judgments that were final as to Iran but not 'globally final' as to all defendants or all MDL claims – directly contradicting the premise of Mr. Schutty's request.

These orders and certifications enabled the *Hoglan* plaintiffs to register and enforce their judgment in other jurisdictions, notwithstanding ongoing proceedings elsewhere in the MDL. These materials confirm that the *Hoglan* plaintiffs have long proceeded on the understanding – accepted by the Court – that their judgments are final and enforceable, subject to the limitations imposed by applicable law. The *Hoglan* plaintiffs did not merely obtain paper relief. They pursued – and this Court allowed – active post-judgment enforcement proceedings, including turnover motions directed at Iranian assets held by third parties. In 2022, the *Hoglan* plaintiffs filed motions for turnover of Iranian oil and related assets, supported by detailed briefing and declarations. *See* **Exhibit 5(a)** (MDL ECF No. 7721) and **Exhibit 5(b)** (MDL ECF No. 7722). The Court has also authorized overseas enforcement activity, including third-party restraint proceedings, against Clearstream Banking S.A. Specifically, on December 2, 2024, Judge Daniels granted the *Havlish* and *Hoglan* plaintiffs leave to serve restraining notices on Clearstream pursuant to N.Y. C.P.L.R. § 5222(c). *See* **Exhibit 9**, Order Dec. 2, 2024, ECF No. 727.

These proceedings underscore that the Court has long treated terrorism judgments as enforceable once final, without requiring the resolution of every remaining MDL issue. The Court has not merely acknowledged finality; it has affirmatively authorized attachment and execution against Iranian assets, including assets held by third parties. Notably, the Hoglan judgment did not include punitive damages; Respondents' judgments do – further underscoring their finality and enforceability.

## IV.    Federal Law Independently Recognizes These Judgments as Final

Federal law independently confirms the finality of Respondents' judgments. Eligibility for compensation from the U.S. Victims of State Sponsored Terrorism Fund ("USVSSTF" or the "Fund") requires a "final judgment," defined as an enforceable judgment not subject to further appellate review. **Exhibit 10**, 34 U.S.C. § 20144(j)(4). Respondents, like many other MDL plaintiffs, have already received Fund distributions based on this statutory determination. Mr. Schutty's contrary theory cannot be reconciled with federal law or federal agency determinations already applied to these judgments.

Mr. Schutty's request for a global freeze on Rule 54(b), § 1610(c), and AO 451 relief finds no support in statute, precedent, or MDL practice. To the contrary, delaying such relief would materially prejudice terrorism judgment creditors at a moment when Iranian-linked assets are actively being litigated in parallel proceedings in the Eastern District of New York and would risk allowing non-9/11 creditors to gain priority.

### V. The Havlish Plaintiffs Are Not "Precluded" from the USVSST Fund

In recent correspondence, it has been asserted that certain *Havlish* plaintiffs are "precluded" from participation in the USVSSTF. While Respondents also believe that judgment enforcement is proper and should be allowed, the *Havlish* plaintiffs' assertion is incorrect and misleading.

The subject *Havlish* plaintiffs are not barred from participating in the Fund. Rather, they made an affirmative election not to participate, because participation would subject them to statutory distribution rules – including parity and catch-up provisions – that could delay Fund distributions to them until other claimants reached equivalent compensation levels. The Fund statute permits such elections; it does not either mandate participation or <u>impose exclusion</u>. *See* 34 U.S.C. § 20144(d), (j). Accordingly, arguments premised on the idea that *Havlish* plaintiffs are involuntarily excluded from the Fund – and therefore uniquely dependent on private enforcement – rest on an incorrect factual premise. Their status reflects choice, not preclusion.

### VI. Conclusion

For these reasons, Respondents respectfully submit that Mr. Schutty's request should be denied. We respectfully submit that the Court should continue its established practice of permitting the orderly issuance of Rule 54(b) certifications (to the extent deemed necessary), findings under 28 U.S.C. § 1610(c), and AO 451 registrations for judgment creditors holding final, enforceable terrorism judgments – consistent with this Court's prior orders in *Hoglan* and other matters.

We thank the Court for its consideration of this letter.

Respectfully submitted,

*/s/Jonathan P. Vuotto*
Jonathan P. Vuotto

Enclosures